UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
ALEXIS CANDELARIO-SALAZAR,                       :

                                    Plaintiff,   :          REPORT &
                                                 :          RECOMMENDATION
         -against-                               :          20-CV-760 (MKB) (SMG)
                                                 :
KINGS II DELI & GROCERY, INC., JALAL AHMED, :
KAMAL AHMED, GHASSAN ABO AKRAM, and              :
AKRAM GHARAMA,                                   :
                                                 :
                                    Defendants.  :
-------------------------------------------------------------------- x
GOLD, STEVEN M., U.S. Magistrate Judge:


### INTRODUCTION

Plaintiff Alexis Candelario-Salazar brings this action pursuant to the Fair Labor

Standards Act ("FLSA") and New York Labor Law ("NYLL") against defendants Kings II Deli

& Grocery, Inc. ("Kings Deli"), Jalal Ahmed, Kamal Ahmed, Ghassan Abo Akram, and Akram

Gharama, seeking unpaid minimum and overtime wages, spread-of-hours pay, compensation for

failure to provide proper wage notices and wage statements, statutory damages, liquidated

damages, pre- and post-judgment interest, and attorney's fees and costs.  Compl., Dkt. 1.

Upon plaintiff's application and in light of defendants' failure to appear in or otherwise

defend this action, the Clerk of the Court noted defendants' default.  Certificate of Default, Dkt.

13.  Plaintiff then moved for default judgment against defendants.  Not. of Mot. for Default J.,

Dkt. 15.  The Honorable Margo K. Brodie referred plaintiff's motion to me for report and

recommendation.  Order dated May 8, 2020.

## Factual BACKGROUND

Kings Deli is a corporation which owns and operates a delicatessen located at 2111 Avenue Z, Brooklyn, New York 11235.  Compl. ¶¶ 6, 8.  Plaintiff alleges that, at all relevant times, defendants Jalal Ahmed, Kamal Ahmed, Ghassan Abo Akram, and Akram Gharama owned and operated Kings Deli.  *Id.* ¶¶ 14-19.  Between on or about March 18, 2019 until on or about February 17, 2020, plaintiff was employed by defendants as a cook with duties including preparing and cooking food, cleaning, and stocking shelves at Kings Deli.  *Id.* ¶ 22; Decl. of Alexis Candelario-Salazar ("Candelario-Salazar Decl.") ¶ 13, Dkt. 15-12; Mem. of Law in Supp. of Pl.'s Mot. for Default J. ("Mem. of Law") at 3-4, Dkt. 15-1.

Throughout his employment, plaintiff typically worked 6 days per week, 12 hours per day, for a total of 72 hours per week.  Compl. ¶¶ 26, 27.  Plaintiff was not required to clock in and out for his daily shifts or otherwise track his time worked, and defendants failed to keep and maintain time records for the hours that plaintiff worked each day.  *Id.* ¶¶ 24, 25.  Plaintiff claims he was paid $12 per hour from March 18, 2019 until approximately mid-December of that year; thereafter, plaintiff claims to have been paid $13.25 per hour.  *Id.* ¶¶ 28, 29.  Plaintiff claims that he was paid straight time for all hours worked, and was not compensated at a rate of one and one-half times his regular rate of pay for all hours worked in excess of 40 per week.  *Id.* ¶¶ 30-32.  At these rates, plaintiff alleges that he was not paid at the statutory minimum wage rate for all hours worked.  *Id.* ¶ 33.  Plaintiff further claims that he was not paid spread-of-hours compensation for each day in which he worked more than 10 hours, and that defendants did not provide him with a written wage notice or wage statements at any point during his employment. *Id.* ¶¶ 34-36.

**DISCUSSION**

**I.      Liability**

Once the Clerk enters a defendant's default, the defendant is deemed to have admitted the well-pleaded allegations in the complaint pertaining to liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Montcalm Publ'g Corp. v. Ryan*, 807 F. Supp. 975, 977 (S.D.N.Y. 1992).  "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted); *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

   *A.   FLSA*

"The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers." *Thompson v. Hyun Suk Park*, 2019 WL 1299194, at *2 (E.D.N.Y. Mar. 5, 2019), *report and recommendation adopted*, 2019 WL 1298563 (E.D.N.Y. Mar. 20, 2019); *see Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).  To demonstrate entitlement to wage and overtime protections under the FLSA, a plaintiff must show that (1) an employer-employee relationship exists and (2) the employment falls under the FLSA's individual or enterprise coverage provisions.  *See Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wages for qualifying employees); *id.* § 207(a)(1) (providing for overtime wages for qualifying employees).

3

i.  Whether Defendants were Plaintiff's Employers
under the FLSA

The FLSA broadly defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and a "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons," *id.* § 203(a).  The FLSA further defines the term "employee" as "any individual employed by an employer."  *Id.* § 203(e)(1).  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  To determine whether a party qualifies as an "employer" under the FLSA, "the overarching concern" that courts consider is "whether the alleged employer possessed the power to control the workers in question, . . . with an eye to the 'economic reality' presented by the facts of each case."  *Id.* (quoting *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)) (internal citation omitted); *see Baizan Guerrero*, 2019 WL 4889591, at *4.  When examining the "economic reality" of a particular situation, the following factors are relevant: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Herman*, 172 F.3d at 139 (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  No one factor is dispositive.  *See id.*

Here, plaintiff alleges that Kings Deli owned and operated a delicatessen, located at 2111 Avenue Z, Brooklyn, New York 11235, at which plaintiff was employed as a cook.  Compl. ¶¶ 5, 8.  Plaintiff alleges that the individually named defendants, Jalal Ahmed, Kamal Ahmed, Ghassan Abo Akram, and Akram Gharama, owned and operated Kings Deli, and that "[d]efendants are covered employers within the meaning of the FLSA and the NYLL, and, at all

4

relevant times, jointly employed Plaintiff." *Id.* ¶¶ 14, 21.  Plaintiff further alleges that the individual defendants made decisions regarding the following: "the decision to hire [p]laintiff," "the daily supervision of [p]laintiff's duties," "setting [p]laintiff's work schedule," "deciding the hours that [p]laintiff work[ed] each week," "the manner in which [p]laintiff [was] paid." "deciding [p]laintiff's rate(s) of pay," "the job duties that [p]laintiff perform[ed]," "the amount of overtime [plaintiff] worked," and "employee compensation policies." *Id.* ¶¶ 37-46.  While plaintiff does not allege that the individual defendants maintained employment records, he does allege that they "failed to keep and maintain time records for the hours that plaintiff worked each day and each week." *Id.* ¶ 25.  As the other factors are clearly satisfied by plaintiff's allegations, I find that defendants meet the definition of an employer under the FLSA and respectfully recommend that each of them be held jointly and severally liable for any judgment entered in this case.  *See* 29 C.F.R. § 791.2; *see also Sarmiento Perez v. Comhar Grp. LLC*, 2020 WL 1364908, at *4 (E.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1332200 (E.D.N.Y. Mar. 23, 2020); *Rodriguez v. Solares Corp.,* 2018 WL 7252949, at *4 (E.D.N.Y. Aug. 14, 2018), *report and recommendation adopted*, 2019 WL 486883 (E.D.N.Y. Feb. 7, 2019).

ii.   Whether Plaintiff's Employment was Covered by the FLSA

The FLSA's minimum wage and overtime provisions apply only to those "employees (1) who are *personally* 'engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'individual coverage'), or (2) who are 'employed in an *enterprise* engaged in [interstate] commerce or in the production of goods for [interstate] commerce' (so-called 'enterprise coverage')."  *Shim v. Millennium Grp.*, 2009 WL 211367, at *2 (E.D.N.Y. Jan. 28, 2009) (quoting 29 U.S.C. §§ 206(a), 207(a)); *see Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (per curiam).  As relevant here, to properly plead

enterprise coverage, a plaintiff must demonstrate that his employer has "annual gross volume of sales made or business done [of] not less than $500,000" and has two or more employees regularly and recurrently engaged in commerce or the production of goods for commerce, including the "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce[.]"  29 U.S.C. § 203(s)(1)(A)(i)–(ii); *see* 29 C.F.R. § 779.238.

    Here, plaintiff alleges that at all times relevant to this action, King Deli

> was an 'enterprise engaged in commerce or in the production of goods for commerce' within the meaning of the FLSA. . . . Defendant Kings Deli employed two or more employees that regularly handled goods and materials that moved in interstate commerce, including [p]laintiff, who handled food, beverages, and kitchen supplies that originated outside of the State of New York. . . . The gross annual volume of sales made or business done by Defendant Kings Deli for the year 2019 was not less than $500,000.00 each year.

Mem. of Law at 3; *see* Compl. ¶¶ 53-55.  Although some courts have questioned whether complaints that merely repeat the language of a statute without alleging supporting facts properly plead a cause of action, *see, e.g., Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 85 (E.D.N.Y. 2012), other courts have held allegations similar to those made here with respect to enterprise coverage to be sufficient when it was otherwise "reasonable to infer that the myriad goods necessary to operate" the enterprise and that generates "over $500,000.00 in annual sales d[id] not exclusively come from New York State."  *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015); *see Huerta v. Victoria Bakery*, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30, 2012).

    Accordingly, because it is logical to infer that at least some of a deli's "products and produce would have originated outside of New York," I find that plaintiff has "provided an

adequate factual basis for inferring that [d]efendants had 'employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and, therefore were an enterprise engaged in [interstate] commerce under the FLSA." *Cardoza v. Mango King Farmers Mkt. Corp.*, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015); *Guerrero*, 2019 WL 4889591, at *5 ("it is reasonable to infer that the operation of a New York deli with over $500,000.00 in annual sales 'requires a wide variety of materials. . . for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies,' and it is 'reasonable to infer that some of these materials moved or were produced in interstate commerce'") (quoting *Fermin*, 93 F. Supp. 3d at 33).

     *B. NYLL*

Similar to the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business[,] or service." N.Y. Lab. Law § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because these definitions are similar to the FLSA's definitions, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Khan v. Nyrene, Inc.*, 2020 WL 1931282, at *5 (E.D.N.Y. Mar. 11, 2020) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2020 WL 1929066 (E.D.N.Y. Apr. 21, 2020). Therefore, for the same reasons discussed above with respect to concluding that plaintiff is jointly employed by defendants under the FLSA, I respectfully recommend that defendants be held jointly and severally liable for any judgment

entered in this case under the NYLL.  *See id.; see also Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003).

## II.     Relief

A party's default "is not considered an admission of damages."  *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158 (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). Accordingly, "[i]f the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'"  *Gunawan*, 897 F. Supp. 2d at 83 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  A court may make this determination based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence.  *See* Fed. R. Civ. P. 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991).

### A.   Unpaid Wages Due

"Under both the FLSA and NYLL, an employer is required to maintain records of the wages, hours, and persons employed by him [or her]."  *Lu Nan Fan v. Jenny & Richard's Inc.*, 2019 WL 1549033, at *9 (E.D.N.Y. Feb. 22, 2019) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Where, as here, defaulting defendants fail to produce the requisite records, a plaintiff's sworn declaration "containing information as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed, is considered a sufficient basis for the determination of damages in this context."  *Nikolaeva v. Home Attendant Servs. of Hyde Park*, 2017 WL 3491964, at *3 (E.D.N.Y. July 19, 2017) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2017 WL 3493136 (E.D.N.Y. Aug. 14, 2017); *see also Herrera v. Tri-State Kitchen and Bath, Inc.*, 2015 WL 1529653, at *8

(E.D.N.Y. Mar. 31, 2015).  "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate."  *Lu Nan Fan*, 2019 WL 1549033, at *9.

Plaintiff has submitted a declaration describing his dates of employment along with his average hours and wages per week.  Candelario-Salazar Decl. ¶¶ 11, 16-19.  Plaintiff's declaration also includes as an attachment several tables calculating the corresponding unpaid wages and overtime owed.  Candelario-Salazar Decl.  In light of defendants' default, plaintiff's evidence on damages stands uncontroverted and provides a sufficient basis upon which to determine and award damages.

i.     Regular Wage

To calculate a plaintiff's minimum wage and overtime compensation, the Court must first determine the plaintiff's regular hourly wage rate.  *See, e.g.*, *Xin Long Lin v. New Fresca Tortillas, Inc.*, 2019 WL 3716199, at *3 (E.D.N.Y. May 1, 2019), *report and recommendation adopted*, 2019 WL 3714600 (E.D.N.Y. May 28, 2019); *Santillan v. Henao*, 822 F. Supp. 2d 284, 295 (E.D.N.Y. 2011).  Under the FLSA, the regular rate is defined "as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he [or she] is employed" and is "drawn from what happens under the employment contract."  29 C.F.R. § 778.108.

Here, plaintiff alleges that he was paid at a regular rate of $12.00 per hour for all hours that he worked between on or about March 18, 2019 and December 14, 2019, and $13.25 per hour for all hours that he worked for the remainder of his employment, which ended on or about February 17, 2020.  Candelario-Salazar Decl. ¶ 18-19; Table of Damages.  Therefore, the Court uses these uncontroverted amounts as plaintiff's regular rate of pay for the time periods indicated.

ii.    Unpaid Minimum Wages

Both the FLSA and the NYLL mandate that employees be paid at least a minimum hourly rate for every hour that they work.  *See* 29 U.S.C. § 206(a); N.Y. Lab. Law § 652(1). "The federal minimum wage does not preempt the state minimum wage, and a plaintiff may recover under whatever statute provides the highest measure of damages."  *Wicaksono v. XYZ 48 Corp.*, 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (internal citation omitted), *report and recommendation adopted*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011); *see also* 29 U.S.C. § 218(a) (providing that "[n]o provision of [the FLSA] shall excuse noncompliance with any Federal or State law . . . establishing a minimum wage higher than the minimum wage established under [the FLSA]").

At all times relevant here, the FLSA required defendants to pay plaintiff a minimum hourly wage of $7.25.  *See* 29 U.S.C. § 206(a)(1)(C).  The applicable minimum wage under the NYLL for a New York City employer with ten or less employees varied over the relevant time period, from $13.50 per hour on or after December 31, 2018, to $15.00 per hour on or after December 31, 2019.  *See* N.Y. Lab. Law § 652(1)(a)(ii); Candelario-Salazar Decl. ¶ 10 ("During my employment, Defendant Kings Deli employed two or more employees that regularly handled goods and materials, such as food, beverages, and kitchen supplies, that originated outside of the State of New York").

Here, plaintiff's regular rate of pay was $12.00 per hour between on or about March 18, 2019 and December 14, 2019, and $13.25 per hour for the remainder of his employment, which ended on or about February 17, 2020.  Candelario-Salazar Decl. ¶ 18-19; Table of Damages. Thus, plaintiff was paid less than the minimum wage rate set by the NYLL for the entirety of his employment with defendants.

For the pay period from March 17, 2019 to December 14, 2019, plaintiff was paid $1.50 below the hourly minimum wage rate ($13.50 - $12.00) and is owed $4,212.00 for the 72 hours that he worked each week in that period ($1.50 x 72 hours x 39 weeks); for the pay period from December 15, 2019 to December 28, 2019, plaintiff was paid $0.25 below the hourly minimum wage rate ($13.50 - $13.25) and is owed $36.00 for the 72 hours that he worked each week in that period ($0.25 x 72 hours x 2 weeks); for the pay period from December 29, 2019 to December 30, 2019, plaintiff was paid $0.25 below the hourly minimum wage rate ($13.50 - $13.25) and is owed $3.00 for the 12 hours that he worked in that period ($0.25 x 12 hours); for the pay period from December 31, 2019 to January 4, 2020, plaintiff was paid $1.75 below the hourly minimum wage rate ($15.00 - $13.25) and is owed $105.00 for the 60 hours that he worked in that period ($1.75 x 60 hours); for the pay period from January 5, 2020 to February 15, 2020, plaintiff was paid $1.75 below the hourly minimum wage rate ($15.00 - $13.25) and is owed $756.00 for the 72 hours that he worked in that period ($1.75 x 72 hours x 6 weeks); and for the pay period from February 16, 2020 to February 17, 2020, plaintiff was paid $1.75 below the hourly minimum wage rate ($15.00 - $13.25) and is owed $21.00 for the 12 hours that he worked in that period ($1.75 x 12 hours).  *See* Table of Damages.  Consequently, I respectfully recommend that plaintiff be awarded a sum of $5,133.00 in unpaid minimum wages.

### iii.   Unpaid Overtime Compensation

Overtime compensation under the FLSA is 1.5 times the regular rate of pay for each hour worked in excess of forty hours per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a).  The NYLL incorporates and restates the FLSA's requirements, and so the analysis of overtime claims under the NYLL is generally the same as under the FLSA.  *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723

F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL). "An employee's appropriate overtime rate is calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half." *Baizan Guerrero*, 2019 WL 4889591, at *8 (internal quotation marks and citation omitted).

Here, plaintiff has sufficiently alleged that defendants did not pay him overtime compensation for the period between March 18, 2019 and February 15, 2020. *See* Candelario-Salazar Decl. ¶ 22; Table of Damages. For the period between March 17, 2019 and December 28, 2019, plaintiff should have been paid at a rate of $20.25 ($13.50 x 1.5) for each hour that he worked in excess of 40 hours per week. Plaintiff's overtime deficit between the NYLL minimum wage and his overtime compensation is $6.75 ($21.25 - $13.50), and as plaintiff worked for a total of 72 hours per week during this time period, he is owed overtime compensation for 32 hours (72 - 40) per week. Thus, plaintiff is entitled to $216 ($6.75 × 32 hours) in overtime compensation per week for a total of 41 weeks between March 17, 2019 and December 28, 2019, for a total of $8,856.00 in overtime owed during this period.

For the period between December 29, 2019 and February 15, 2020, plaintiff should have been paid at a rate of $22.50 ($15.00 x 1.5) for each hour that he worked in excess of 40 hours per week. Plaintiff's overtime deficit between the NYLL minimum wage and his overtime compensation is $7.50 ($22.50 - $15.00), and as plaintiff worked for a total of 72 hours per week during this time period, he is owed overtime compensation for 32 hours (72 - 40) per week. Thus, plaintiff is entitled to $240 ($7.50 × 32 hours) in overtime compensation per week for a total of 7 weeks between December 29, 2019 and February 15, 2020, for a total of $1,680.00 in overtime owed during this period.

In sum, I respectfully recommend that plaintiff be awarded a total of $10,536.00 in unpaid overtime wages.

iv.    <u>Spread-of-Hours Compensation</u>

In New York, employees are entitled to receive "spread-of-hours" pay, which is "one hour's pay at the basic minimum hourly wage rate" for any workday that lasts longer than 10 hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).  "Only employees making the minimum wage rate, or less, are eligible for spread-of-hours compensation."  *Hernandez v. Delta Deli Mkt. Inc.*, 2019 WL 643735, at *7 (E.D.N.Y. Feb. 12, 2019).  But under Section 146-1.6(d) of New York Codes, Rules and Regulations "'all employees in restaurant and all-year hotels' are entitled to spread-of-hours pay regardless of their regular pay rate."  *Baizan Guerrero*, 2019 WL 4889591, at *8 (citing *Elisama v. Ghzali Gourmet Deli, Inc.*, 2016 WL 11523365, at *11, (S.D.N.Y. Apr. 29, 2016); N.Y.C.R.R. § 146–1.6(d).  Courts have found that deli employees qualify as restaurant employees for the purpose of Section 146-1.6(d).  *Elisama*, 2016 WL 11523365, at *11.

Here, plaintiff need not rely on the exception for restaurant and hotel workers because he alleges that he worked for 12 hours per day, 6 days per week, and received less than the prevailing minimum wage during all of the time periods at issue.  *See* Candelario-Salazar Decl. ¶ 16-17; Compl. ¶ 26.  For the period from March 17, 2019 to December 28, 2019, plaintiff worked 12 hours per day for 6 day a week for a total of 41 weeks, which entitles him to one hour of extra pay per day at the prevailing hourly minimum wage of $13.50, for a total of $3,321.00 (41 weeks x 6 days x $13.50); for the period from December 29, 2019 to December 30, 2019, plaintiff worked 12 hours per day for 1 day, which entitles him to one hour of extra pay at the prevailing hourly minimum wage of $13.50; for the pay period from December 31, 2019 to

13

January 4, 2020, plaintiff worked 12 hours per day for 5 days, which entitles him to one hour of extra pay per day at the prevailing hourly minimum wage of $15.00, for a total of $75 (5 days x $15.00); for the pay period from January 5, 2020 to February 15, 2020, plaintiff worked 12 hours per day for 6 day a week for a total of 6 weeks, which entitles him to one hour of extra pay per day at the prevailing hourly minimum wage of $15.00, for a total of $540.00 (6 weeks x 6 days x $15.00); and for the period from February 16, 2020 to February 17, 2020, plaintiff worked 12 hours per day for 1 day, which entitles him to one hour of extra pay at the prevailing hourly minimum wage of $15.00.

Therefore, I respectfully recommend that plaintiff be awarded a total of $3,964.50 in spread-of-hours compensation.

### B.  Statutory Damages under the Wage Theft Prevention Act

Section 195(1)(a) of the NYLL requires employers to provide employees at the time of hiring with a wage notice containing, among other things, the rate of pay, the basis thereof, and the pay schedule.  After February 27, 2015, violations of section 195(1) carry damages of $50 per workday, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-b).  Furthermore, section 195(3) of the NYLL requires employers to furnish employees with "a statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details."  *Rojas v. Splendor Landscape Designs Ltd.*, 268 F. Supp. 3d 405, 412 (E.D.N.Y. 2017) (internal quotation marks and citation omitted).  After February 27, 2015, violations of section 195(3) carry damages of $250 per workday, up to a maximum of $5,000.  N.Y. Lab. Law § 198(1-d).[1]

---

[1]  Prior to February 27, 2015, employees were entitled to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500, and for wage statement violations of $100 per work week, not to exceed $2,500.  *See Cazarez v. Atl. Farm & Food Inc.*, 2017 WL 3701687, at *6 (E.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3701479 (E.D.N.Y. Aug. 25, 2017).

Here, plaintiff alleges that he never received a wage notice or wage statements from defendants at any point throughout the course of his employment.  Compl. ¶¶ 35, 36; Candelario-Salazar Decl. ¶¶ 26, 27.  Because plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, I respectfully recommend that plaintiff be awarded the maximum statutory damages of $5,000 under N.Y. Lab. Law § 195(1) and $5,000 under N.Y. Lab. Law § 195(3), for a total of $10,000.  *See, e.g., Sarmiento Perez*, 2020 WL 1364908, at *6; *Jianmin Jin v. Shanghai Original, Inc.*, 2019 WL 3244187, at *5 (E.D.N.Y. July 19, 2019).

### C.  Liquidated Damages

The FLSA and the NYLL both allow for liquidated damages awards equaling 100% of the wages due.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Under the FLSA, courts may, in their discretion, decline to award liquidated damages where employers "show[] to the satisfaction of the court" that they acted in good faith and reasonably believed they did not violate the FLSA.  29 U.S.C. § 260.  Similarly, the NYLL permits a court to decline to award liquidated damages if "the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 663(1).

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018).  "In light of the principle that the law providing the greatest recovery will govern, [p]laintiff may be awarded liquidated damages pursuant to the NYLL or the FLSA."  *Jian Hua Li v. Chang Lung Grp. Inc.*, 2020 WL 1694356, at *14 (E.D.N.Y. Apr. 7, 2020) (internal quotation marks and citation omitted).  However, "[l]iquidated damages are not

available for violations of the NYLL wage notice and statement provisions." *Id.*; *see* N.Y. Lab. Law § 198(1-a), (1-d).

Here, defendants, having defaulted, have failed to make a showing of good faith. *See, e.g.*, *Lu Nan Fan*, 2019 WL 1549033, at *11. Therefore, plaintiff is entitled to 100% of his damages for minimum wages ($5,133.00), overtime wages ($10,536.00), and spread-of-hours premiums ($3,964.50) under the NYLL. Accordingly, I respectfully recommend that plaintiff be awarded $19,633.50 in liquidated damages.

### D. Prejudgment Interest

The NYLL provides for prejudgment interest at an interest rate of 9% per annum in addition to liquidated damages. *See* N.Y. Lab. Law § 198(1-a); *Espinoza v. Indus. Glass & Mirror Inc.*, 2016 WL 7650592, at *6 (E.D.N.Y. Nov. 30, 2016), *report and recommendation adopted*, 2017 WL 65828 (E.D.N.Y. Jan. 5, 2017). Courts have discretion in determining a reasonable date from which to award prejudgment interest, such as the "the earliest ascertainable date the cause of action existed," or a reasonable intermediate date if damages were incurred at various times. *Santillan*, 822 F. Supp. 2d at 298 (quoting N.Y. C.P.L.R. § 5001(b)). Because plaintiff was denied adequate wages throughout his employment, the midway point between when plaintiff began and ceased working for defendants is a reasonable intermediate date for purposes of calculating prejudgment interest.

Here, plaintiff worked for defendants from on or about March 18, 2019, until on or about February 17, 2020. Compl. ¶ 5; Candelario-Salazar Decl. ¶ 11. Accordingly, the intermediate date in plaintiff's employment is approximately September 2, 2019. As such, I respectfully recommend that plaintiff be awarded prejudgment interest on $19,633.50, which amounts to $4.84 per diem, from September 2, 2019, through entry of judgment.

16

### E.  Post-judgment Interest

Plaintiffs also contend that the total amount of the judgment should be increased by fifteen percent if any amounts remain unpaid ninety days after the judgment is entered.  Mem. of Law at 22.  The NYLL indeed requires that

> [a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

N.Y. Lab. Law §§ 198(4), 663(4).  While "[t]he automatic-increase language directly follows language about the right to collect attorney's fees and costs incurred in enforcing any court judgment," many decisions in this Circuit have interpreted this provision to apply to the total amount of the judgment.  *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, 2017 WL 7625319, at \*4 (E.D.N.Y. Nov. 7, 2017) (collecting cases, analyzing the legislative history of the provision, and concluding that the language refers to "the entire outstanding judgment, and not simply to the attorney's fees judgment"), *report and recommendation adopted*, Order dated Dec. 12, 2017, *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16-CV-1907 (E.D.N.Y. Dec. 12, 2017).

Here, while plaintiff asserts claims under the FLSA and NYLL, damages were calculated according to the NYLL provisions setting higher minimum wages and providing for spread-of-hours pay, wage notices, and statements.  Accordingly, if any of these damages remain unpaid ninety days after judgment is entered, and if no appeal is then pending, the amount of the judgment may be automatically increased by fifteen percent pursuant Section 198(4) of the NYLL.

Finally, under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court. . . calculated from the date of the entry of the

judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for

the calendar week preceding the date of the judgment."  An award of post-judgment interest at

the statutorily prescribed rate is mandatory.  *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir.

2008); *see also Fermin*, 93 F. Supp. 3d at 53.  Accordingly, I respectfully recommend that

plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court

enters judgment, until the date the judgment is paid.

        *F.  Attorney's Fees*

     Plaintiff is entitled to recover reasonable attorney's fees and costs under both the FLSA

and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  "The party seeking

reimbursement of attorney's fees bears the burden of proving the reasonableness and the

necessity of the hours spent and rates charged."  *Fermin*, 93 F. Supp. 3d at 51; *see generally*

*N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Well-

established Second Circuit doctrine requires that a fee application be supported by

"contemporaneous time records" that "specify, for each attorney, the date, the hours expended,

and the nature of the work done."  *Carey*, 711 F.2d at 1148.  "Failure to do so results in denial of

the motion for fees."  *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992);

*see also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010).  District courts have

broad discretion in determining the reasonableness of an attorney's requested fees.  *See*

*Chocolatl v. Rendezvous Cafe, Inc.*, 2019 WL 5694104, at *14 (E.D.N.Y. Aug. 16, 2019), *report*

*and recommendation adopted*, 2020 WL 1270891 (E.D.N.Y. Mar. 17, 2020).

     Courts awarding attorney's fees calculate a "presumptively reasonable fee" by taking the

product of the hours reasonably expended and a reasonable hourly rate.  *Arbor Hill Concerned*

18

*Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).[2]  In

addition, courts consider case-specific variables such as

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate; (6)
> whether the fee is fixed or contingent; (7) the time limitations
> imposed by the client or the circumstances; (8) the amount involved
> in the case and the results obtained; (9) the experience, reputation,
> and ability of the attorneys; (10) the 'undesirability' of the case; (11)
> the nature and length of the professional relationship with the client;
> and (12) awards in similar cases.

*Id.* at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974)).

i.   <u>Reasonable Hourly Rates</u>

A reasonable hourly rate reflects "what a reasonable, paying client would be willing to

pay." *Arbor Hill*, 522 F.3d at 184.  This rate should be based on rates "prevailing in the

community for similar services of lawyers of reasonably comparable skill, experience, and

reputation." *Cruz v. Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  "Determination of the prevailing market rates

may be based on evidence presented or a judge's own knowledge of hourly rates charged in the

community." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc.*, 2019 WL 3937126, at *14

(E.D.N.Y. July 3, 2019) (citing *Farbotko v. Clinton Cty. of N.Y.*, 433 F.3d 204, 209 (2d Cir.

2005)).  "The 'community' is generally considered the district where the district court sits." *Id.*

(citing *Lochren v. Cty. of Suffolk*, 344 F. App'x 706, 708 (2d Cir. 2009)).

In this case, "the reasonable rate should reflect the rates awarded in FLSA cases in this

district, not cases involving other fee-shifting statutes." *Encalada v. Baybridge Enters. Ltd.*,

---

[2] The "presumptively reasonable fee" is historically known as the "lodestar." *Arbor Hill*, 522 F.3d at 183.

2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014), *aff'd*, 612 F. App'x 54 (2d Cir. 2015).

Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for

partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100

for legal support staff in FLSA cases.  *See, e.g.*, *Rodriguez v. Yayo Rest. Corp.*, 2019 WL

4482032, at *8 (E.D.N.Y. Aug. 23, 2019), *report and recommendation adopted*, 2019 WL

4468054 (E.D.N.Y. Sept. 18, 2019); *Elvey*, 2019 WL 3937126, at *15; *Hernandez*, 2019 WL

643735, at *10; *Cohetero v. Stone & Tile, Inc.,* 2018 WL 565717, at *4 (E.D.N.Y. Jan. 25,

2018).

Here, Keith E. Williams, Esq., a member of the Law Office of Neil H. Greenberg &

Associates, P.C., requests an hourly rate of $275.00.  *See* Supplemental Declaration of Keith E.

Williams, Esq. in Supp. of Pl.'s Mot. for Default J. ("Williams Suppl. Decl."), Dkt. 20-1.  As set

forth in his declaration, Mr. Williams was the only attorney at the Law Office of Neil H.

Greenberg & Associates, P.C. who worked on this matter.  *Id.* ¶ 6.  Mr. Williams has been

admitted to practice law since 2014 and has "appeared in over 140 wage and hour cases in the

Eastern and Southern Districts of New York, and countless more in the Supreme Court of the

State of New York."  Williams Decl.  *Id.* ¶¶ 3, 5.  Given Mr. Williams' experience in wage and

hour cases, I respectfully recommend a fee award based upon a rate of $275 per hour.

ii.    Reasonable Numbers of Hours

The next step in awarding attorney's fees is determining the reasonableness of the

number of hours expended by counsel.  In reviewing a fee application, the court should exclude

"excessive, redundant, or otherwise unnecessary" hours.  *Bliven v. Hunt*, 579 F.3d 204, 213 (2d

Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  The court should examine

each entry "with a view to the value of the work product of the specific expenditures to the

20

client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).  Furthermore, block-billing and vague descriptions make it difficult to determine the reasonableness of the time spent on particular tasks and warrant a reduction in attorney's fees.  *See Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142–43 (E.D.N.Y. 2013).  A percentage reduction is "a practical means of trimming fat from a fee application" and is a permissible way of reducing a fee award.  *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (internal quotation marks and citations omitted).

Here, the contemporaneous billing records show that Mr. Williams billed 23.3 hours on this matter.  Billing Records, Dkt. 20-2.  While this amount of time would normally be considered reasonable, the Court notes that Mr. Williams is currently representing the plaintiff, Alexis Candelario-Salazar, in a related matter, *Candelario-Salazar v. Panchos Deli Corporation, et al.,* 20-CV-0743.  This related matter involves very similar claims and has been brought against two of the same defendants in this action, Jalal Ahmed and Ghassan Abo Akram.  Having reviewed the billing records in both cases, I find that some of the billed time is redundant.  *See Bliven*, 579 F.3d at 213.  As such, I recommend reducing the claimed billable hours by an across-the-board percentage of 20%.

Therefore, I recommend awarding a reasonable attorney's fee of $5,126.00 (23.3 hours x $275 x 0.8).

### iii.   Costs

A party awarded attorney's fees is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted).  Plaintiff seeks to recover costs of $400 for the filing fee and $300 for service of process, for a total amount of 700.00.  *See* Williams Suppl. Decl. ¶ 10; Ex. B to Williams Suppl. Decl.  I find these costs to be reasonable and respectfully recommend that plaintiff be awarded $700.00 in costs.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that the Court: (1) grant plaintiff's motion for a default judgment against defendants, jointly and severally; (2) award plaintiff damages totaling $49,267.00, consisting of $5,133.00 in unpaid minimum wages, $10,536.00 in unpaid overtime compensation, $3,964.50 in spread-of-hours compensation, $10,000 in statutory damages, and $19,633.50 in liquidated damages; (3) award plaintiff pre-judgment interest on $19,633.50 of that amount at the rate of 9% per year from September 2, 2019, until the date final judgment is entered; (4) award plaintiff post-judgment interest at the statutorily prescribed rate from the date judgment is entered until the judgment is paid; (5) award plaintiff an automatic increase of fifteen percent, as provided by NYLL § 198(4), if any amounts awarded here remain unpaid upon the expiration of ninety days following the entry of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later; and (6) award plaintiff $5,126.00 in attorney's fees and $700.00 in costs.

Any objections to the recommendations made in this Report must be submitted within fourteen days after filing of the Report and, in any event, no later than January 11, 2020.  *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. Proc. 72(b)(2).  Failure to file timely objections may waive the

right to appeal the District Court's order.  *See Small v. Sec'y of Health & Human Servs.*, 892

F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).  Plaintiff is hereby

directed to serve copies of this Report and Recommendation upon defendants at their last known

addresses, and to file proof of service with the Court.

_____/s/_____
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
December 28, 2020

U:\#JH 2020-2021\20-cv-760 Candelario-Salazar v. Kings II Deli & Grocery Inc et al\Candelario-Salazar v. Kings II Deli &
Grocery Inc et al, 20-cv-760 R&R.docx